**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

Civil No. 05md1726 JMR/AJB

In re: Medtronic, Inc. Implantable
Defibrillator Product Liability Litigation

**SPECIAL MASTER'S REPORT AND**
**RECOMMENDATION ON COMMON**
**BENEFIT ATTORNEYS' FEES**

This matter now comes before the court, Magistrate Judge Arthur J. Boylan,

serving in his capacity as Special Master, for report and recommendation on common benefit

attorneys' fees claims in this multi-district litigation.  Hearing was held on August 20, 2008, at

the U.S. Courthouse, 300 South Fourth St., Minneapolis, Minnesota.  Daniel E. Gustafson, Esq.,

and Charles Zimmerman, Esq., appeared as and on behalf of the moving parties.  Daniel Becnel,

Esq., Eric Roberson, Esq., Edward Siegel, Esq., and Kirk Chapman, Esq., counsel for individual

claimants, also addressed the court.  By Order dated May 14, 2008,[1] a common benefit attorneys'

fees committee ("the Committee") was appointed to make allocations for attorneys' fees and

expense, and to consider any objections to such allocations with respect to legal work done for

the common benefit of claimants in this litigation.  On July 31, 2008, the Committee filed a

motion and supporting materials[2] recommending approval of a total amount of $18,250,000 in

common benefit fees.

---

[1] [Docket No. 1016].

[2] [Docket Nos. 1185, 1186, and 1187].

At hearing the court was advised that the formal objections of certain law firms[3] to their common benefits allocations had been resolved and were therefore no longer before the court for consideration on objections.  Issues that were addressed at hearing included: 1) an objection to the lack of an allocation to Milberg LLP[4] with respect to which the Committee declined to make a recommendation in deference to the court's earlier disqualification of the Milberg Weiss firm in this case; 2) objections by retained counsel to a court ordered percentage cap on contingent fees pursuant to individual retainer agreements; and  3) a general challenge[5] regarding the nature of the settlement agreement in this action whereby the settlement agreement with defendant Medtronic, Inc. expressly designated an amount payable as common benefit attorneys' fees.  The court requested and received additional briefing by the Committee addressing the economic justifications for a separate dedicated settlement amount for common benefit attorneys fees, and providing an objective recommendation with respect to a allocation for the common benefit contributions of Milberg LLP, without consideration for the firm's disqualification.

**Settlement Background**

Claimants in this multi-district litigation are individuals who had received surgically implanted heart defibrillators manufactured by Medronic, Inc.  The claims related to a U.S. Food and Drug Administration field action, *i.e.* recall, based upon the possibility that certain models of Medtronic defibrillators were subject to premature battery depletion.  Pursuant

---

[3]  Law firm of Larry D. Drury, Ltd. [Docket No. 1182]; Wilentz, Goldman & Spitzer, P.A. [Docket No. 1189]; and The Rossbacher Firm [Docket No. 1190].

[4] [Docket No. 1191].

[5] Objection by plaintiff Yvette Gonzalez  [Docket No. 1201].

to an initial settlement agreement reached in June 2007, Medtronic, Inc. was to establish a

$75,000,000 fund for distribution to claimants[6] and a separate fund in the amount of $18,750,000

to be allocated for common benefit fees and expenses.  As the result of a greater-than-anticipated

number of claims applicants, the settlement was renegotiated, ultimately resulting in a modified

agreement whereby Medronic, Inc. increased its contribution to the fund for distribution to

claimants,[7] and the common benefit attorneys' fees fund was reduced to $18,250,000, pursuant

to the Amended Master Settlement Agreement and Release executed by the parties on September

14, 2007.

Common benefit counsel thereafter commenced efforts directed towards claims

administration and disbursement of the settlement funds among the claimants.  By Order dated

January 14, 2008, the court approved the plaintiffs' steering committee's ("PSC") proposal for

establishment of an allocation and resolution process which incorporated a claimant

questionnaire to be used in determining the nature of the particular claims and included a

methodology for categorizing the claims, making provisions for certain individualized medical

and economic circumstances.  On February 11, 2008, the court appointed a Claims Review

Committee ("CRC") and authorized a Settlement Claims Review Protocol.  The CRC undertook

---

[6] The settlement negotiations involved not only plaintiffs who filed federal suits that were part of the multi-district litigation, but also involved plaintiffs in state actions, as well as persons who had not yet commenced an action in either state or federal court.  A "global" settlement was anticipated.  Consequently, the initial settlement amounts were to some degree based upon estimates regarding the total number of claimants.

[7] The Amended Master Settlement Agreement dated September 14, 2007, required Medtronic, Inc. to pay the sum of $75,000,000, plus an additional amount of $35,714 for each individual MDL case above the first 2100 individual MDL cases on the updated settlement list.  The total settlement amount dedicated to claims allocations was approximately $100,000,000.

a review of claim forms and fact sheets submitted by each of the participating claimants and

made recommendations to the court for specific monetary allocations.  Individual claimants were

given an opportunity to object to their allocation and each of the objections was considered by

the Special Master whose conclusion regarding whether to adopt the CRC's recommendation or

increase a particular allocation was submitted to the District Court on Report and

Recommendation.  On July 9, 2008, the District Court issued an Order approving allocations to

non-objecting claimants and by Order dated July 30, 2008, the District Court adopted the Special

Master's recommendations with respect to allocations to all remaining claimants, save two

claimants who appealed the Special Master's recommendation and whose allocations were

finalized by subsequent Orders.[8]  On August 12, 2008, the District Court issued an Order

permitting a partial distribution of settlement proceeds to claimants.

      Meanwhile, on May 14, 2008, the court appointed a Common Benefit Attorneys'

Fees Committee ("Committee") to accept and review claims for common benefit fees from

various counsel.  On July 31, 2008, the Committee moved for final approval of a total common

benefit attorneys' fees in the amount of $18,250,000, as well as the separate allocations to

contributing attorneys.  In pre-hearing memorandums certain counsel contested the monetary

allocation allowed them for common benefit contributions.[9]  However, the court was advised at

---

[8] Orders dated August 15, 2008, and September 8, 2008.  Yet another allocation appeal, filed subsequent to the objections deadline, was addressed by Order dated September 29, 2008. There are no outstanding allocation recommendations that have not been approved by the District Court.

[9] Response by Larry D. Drury, Ltd. filed July 31, 2008 [Docket No. 1182]; Response by Wilentz, Goldman & Spitzer, P.A. filed August 1, 2008 [Docket No. 1189]; Response by Rossbacher Firm filed August 1, 2008 [Docket No. 1190]; and Response by Milberg LLP filed August 1, 2008 [Docket No. 1191].

hearing that each of those allocation disputes, except the Milberg LLP objection, had been

resolved, and the objections were withdrawn.  At hearing on August 20, 2008, Milberg LLP

presented argument on its fees claim; oral arguments in opposition to any court imposed

reduction in continent fee rates by retained counsel were presented; and argument was heard

from counsel on behalf of plaintiff Yvette Gonzalez, generally opposing the $18,250,000

common benefit fees set aside.

**Total Common Benefit Fees**

Claims in this matter were resolved by agreement which provided for a specific

payment by Medtronic, Inc. in the amount of $18,250,000, designated as common benefit

attorneys' fees.  The settlement agreement was negotiated by the MDL plaintiffs' steering

committee.  Individual plaintiffs were given the opportunity to accept or reject the settlement

upon being advised of the amount of the allocation each of them could expect to receive under

the settlement.  The settlement contemplates that the ultimate allocation to each claimant be paid

to that claimant's counsel for ultimate distribution consistent with the individual retainer

agreement on costs and attorneys' fees.  All individual claim allocations in this matter have come

from the portion of the settlement designated for claims resolution, and no portion of the

common benefit attorneys fees is taken from the damages resolution agreement by taxation or

assessment.  No claimant filed an objection to an individual (or general) allocation based on a

contention that the common benefit attorneys fees settlement unreasonably reduced the amount

of funds available for damages distributions, and no claimant, except Yvette Gonzalez, has

alleged that the $18,250,000[10] is an excessive common benefit charge.

The sole objector states two primary challenges to the requested common benefit fees request.  First, it is asserted that the PSC unethically negotiated a separate fees agreement based upon a predetermined percentage rate, to the detriment of the plaintiffs, and second, the total amount of the combined settlement results in unreasonable fees being paid to attorneys. Therefore, objecting counsel urges the court to deny approval of the fees agreement and construe the settlements for damages and attorneys' fees in combination, bar a proposed one million dollar charitable donation to be made from the settlement, appoint a special master to undertake a review of common benefit attorneys' time sheets, reduce the lodestar amount, and tax fees to the individual contingent fee awards.

As support for the approval of common benefit attorneys fees the Committee has submitted the Affidavit of Arthur R. Miller, a eminent legal scholar and practicing attorney with significant experience in mass tort litigation.  In his affidavit, Mr. Miller indicates that he considered the challenges presented in this complex case and the scope of the work undertaken by common benefit counsel, and he noted that recovery based common benefit fees is an established ethical legal concept that efficiently advances the interests of the parties and the court, and acts as a disincentive to excessive billing.  Mr. Miller further discussed the propriety of separately designated common benefits fees settlement in light of the significant element of risk faced by counsel who must invest time and expenses without guarantee of any recovery, and

---

[10]  The initial Master Settlement Agreement provided $18,750,000 for common benefit fees, an amount equal to 25% of the original $75,000,000 damages settlement.  Under the Amended Master Settlement, the damages settlement was increased to approximately $100 million and the attorneys' fees settlement was reduced to $18.25 million ( *i.e.* 18.25% of the damages settlement and 15.4% of the total Medtronic, Inc. payout).

the need to encourage participation in common benefit efforts by qualified counsel.  In addition,

the affidavit asserts that a negotiated common benefit fee is preferable to a lodestar fee which

creates financial tension between the client and counsel.  Equally important, the negotiated fee

serves as a substantial inducement to settlement by the defendant which can thereby prevent the

possibility of losing the case and being ordered to pay plaintiffs' legal fees.  Also, defendant can

avoid the daunting prospect and expense of litigating and settling multiple actions.  Finally, Mr.

Miller emphasizes the substantial court supervision and participation in the settlement process,

as well as the full transparency of the process, in offering his opinion that the common benefit

fees agreement in this instance was ethically negotiated and structured in a manner consistent

with provisions of the Manual for Complex Litigation.

The Committee maintains that the common benefit fees agreement is a separate

agreement for payment of fees by Medtronic, Inc., and the fees amount is therefore not being

taken from the claimants, even though the initial fees settlement amount was calculated as a

percentage of the damages settlement.  The percentage-fee method of determining common

benefit attorneys' fees is discussed and approved in the Manual for Complex Litigation,

(Fourth), § 14.121, where a 25% of the common fund is cited as a typical benchmark fees award.

The objector, on the other hand, characterizes Medtronic's dual payment obligation as a single

settlement from which the attorneys are taking an excessive portion as a result of combined

contingent fees and common benefit fees.  The objector buttresses her position with an open

letter[11] signed by numerous legal academics condemning the practice of negotiating separate fee

---

[11] Letter to the American Bar Association's Standing Committee on Ethics and Professional Responsibility, dated September 17, 2007.  Attachment to the Objection by plaintiff Yvette Gonzalez.  The letter was not prepared to address the particulars of this MDL case, and

agreements by class action counsel as creating a conflict of interest between clients and counsel

who must essentially share the common fund.  The letter generally advances the position that

such settlements are presumptively unethical and should be prohibited.  In particular, it seems

that the letter's authors find such fee settlements to be unacceptable to the extent they preclude

judicial review, inhibit client's rights to object or seek recovery of excessive fees, or otherwise

obscure the impact of attorneys' fees on the amount of recovery available to the claimants.  The

Committee responds to the objector's single fund contention by asserting that the fees are not

excessive even if the separate agreements are viewed as establishing a common fund settlement.

        The objector's position first relies on the mere proposition that the actual total

(combined) settlement amount is approximately $118,250,000.[12]  Thereafter, by way of some

unpersuasive mathematic analysis and assumptions, it is argued that attorneys would be taking

an excessive percentage of the total settlement, a result deemed unconscionable to the objector.[13]

The objector proposes, *inter alia*, that approval of the common benefit fees agreement be denied;

that the lodestar method of determining common benefit fees be employed; and that common

benefit fees be taxed against contingent fees.[14]  In opposition to the objector's analysis, the

Committee, in written argument submitted at the court's direction, contends that $5 million[15] of

---

indeed, relates more directly to state court class actions.

    [12]  The Committee rounds this total fund to approximately $118 million in its analysis.
Though certainly not nominal, this $250,000 difference is not critical to the court's decision.

    [13]  Objection by plaintiff Yvette Gonzalez, page 6.

    [14]  Of course, the contingent fee amount would be higher because the fees rates would be
applied to the combined fund total.

    [15]  This amount was derived through comparison to the $10 million set aside for
settlement expenses in In re Guidant, 2008 WL 682174 at *4.  In Guidant, a claims management

the $18.25 million fees settlement should be attributed to claims administration, an expense that

is properly characterized as a cost rather than attorneys' fees.  Also, it is argued that the proposed

$1 million charitable contribution is neither fees nor costs and should be deducted from the total

settlement, thereby leaving common benefits attorneys' fees of $12.25 million, which is

approximately 10.4% of the $118 million total paid by Medtronic, Inc. to resolve the case.

Furthermore, the Committee insists that Medtronic realized and recognized great economic

benefit, to the tune of an estimated $6.25 million, as result of the PSC's negotiation of a

comprehensive settlement, a process which entailed extensive communications with individual

counsel, information gathering, obtaining releases from individual claimants, resolving

Medicare/Medicaid and third-party payor issues, and working with state court counsel–all of

which were tasks that Medtronic would otherwise have been required to complete.  The

Committee suggests that the actual common benefit fees of $6 million ($12.25 million less $6.25

million) are in the range of 5% of the total common fund settlement amount, and when added to

typical one-third contingent fees, the total attorneys' fees in this case is approximately 38 1/3%.

It is the Special Master's determination that under the circumstances in this case

the amount of $18.25 million designated for common benefit attorneys fees is reasonable and

appropriate, and common benefit fees should be approved in that amount.  The legal/ethical

position asserted by the objector does not apply under circumstances in this instance, and the

objector's mathematic analysis regarding the excessiveness on the common benefits fees request

is unpersuasive.  From the perspective of ethics, this matter is distinguishable from the class

---

firm, Analytics, Inc., was hired.  Claims administration duties in the Medtronic MDL has been
performed by common benefit attorneys.

action situation because individual plaintiffs were given opportunity to accept or reject their

individual allocations with full knowledge of both their own individual contingent fee rates and

terms of the Amended Master Settlement Agreement, including the provision for separate

settlement of common benefit fees.  Equally important, the settlement negotiations, as well as the

claims administration process, were undertaken and concluded under the very close supervision

of the magistrate judge, and the final approval of fees is subject to court scrutiny and approval.

In that regard the Special Master is persuaded that common benefit counsel dedicated time and

resources sufficient to support the size of the fees claim[16] in light of discovery and document

review, depositions, court appearances, briefing on non-dispositive and pre-emption motions,

selection of bellwether cases, extensive settlement negotiations, and claims administration

duties.  In addition, factors supporting the fees claim includes the high quality of common

benefit counsel, the novelty of legal issues involved in the case, counsels' dedication to the case

to the exclusion of other work, lodestar calculations at reasonable and customary rates, the risk

entailed in the case, the general efficiency with which the litigation and settlement were

conducted, the actual success of the litigation, and favorable comparison to like cases.  See

---

[16]  The Committee indicated in its Memorandum in Support of Preliminary Approval and Notice of Common Benefit Attorneys' Fees, filed April 30, 2008, that submitted lodestar fees to date were already $14,145,560 (page 20).  Moreover, prior to submitting its recommendation on common benefit attorneys' fees the Committee adjusted the hourly rates requested by contributing lawyers and conducted its own comprehensive lodestar analysis as a cross-check on the reasonableness of each allocation.  The court rejects Gonzalez's counsel's request that common benefits counsel be ordered to submit time sheets for review by either himself or a special master, and that rates be capped at $400 per hour, based partly on the contention that the Committee was improperly applying rates charged by high priced East Coast lawyers.  The Committee imposed its own lodestar cap at $500 per hour for senior partners, reduced accordingly where appropriate in light of attorney experience.  Counsel acknowledged that defendant Medtronic, Inc. availed itself of out-of-town counsel, some of whom were likely paid in excess of $500 per hour.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 719-720 (5th Cir. 1974).

From the mathematics perspective, calculations by both the objector and the Committee involve significant reliance on assumptions and hypothetical numbers, but the court ultimately concludes that the requested common benefit fees are well within the bounds of reasonableness in this instance. The objector's calculations on attorneys' fees, as revealed at the hearing, are largely incomprehensible and simply cannot be sustained.[17] The Committee's calculations are understandable and straightforward. Without making any adjustment to the common benefit request, the combined amount of contingent fees, approximately $33,333,000 (one third of $100 million)[18] and common benefit fees of $18,250,000, is roughly $51,583,000. Claimants are to receive approximately $66,666,000 (less costs), an amount well above the 50% that the objector establishes as a benchmark figure. Furthermore, $18.25 million is 15.4% of the amount paid towards settlement and is appreciably less than the 25% that has been cited as a typical benchmark for a common benefits award. Manual for Complex Litigation, (Fourth), § 14.121, page 188 (footnote case citations therein provided). Next, the court agrees with the Committee's position that the fees settlement should be substantially discounted in recognition of claims administration costs, though in the lesser amount of $3.5 million.[19] Similarly, the court

---

[17] Objector's counsel had concluded that his client would receive less that 50% of her approved allocation as a result of combined contingent fee and common benefits fee. At hearing it was pointed out that only his contingent fee, and no common benefits fees, would be deducted.

[18] Pursuant to recommendations addressed elsewhere in this report, the Special Master finds the 33 1/3% contingent fee rate to be the operative figure in these calculations.

[19] As previously noted, the Committee places a $5 million value on this service, based upon a comparison to similar expenses in the Guidant MDL. The Special Master finds the claims administrations costs in this matter are in the neighborhood of $3.5 million, based upon a determination that the Medtronic MDL involves approximately one third the number of claimants. Based upon his significant familiarity with the claims administration process in this

acknowledges that the Committee can properly attribute a substantial portion of the common

benefit settlement, in this instance $5 million, to costs that would otherwise have been incurred

or risked by Medtronic, and for which Medtronic in turn realized a discount.[20]  Thus, the

common benefit fees amount is construed to be approximately $9.75 million, an amount less than

10% of the liability settlement amount, far below the 25% benchmark, and further reducing the

amount properly characterized as plaintiff attorneys' fees below the conscionability standard

advanced by the objector.

       Finally, in light of the Special Master's determination that the $18.25 million

common benefits attorneys' fees settlement is ethical and reasonable, and should be approved by

the court, the Special Master finds no grounds on which to conclude that the $1 million set aside

for a charitable contribution should be transferred to the liability settlement for allocation to

claimants.  Indeed, the entire common benefit amount is available for distribution as the

Committee finds appropriate, as approved by the court.  In the absence of a current

uncompensated common benefit claim, any excess may properly be distributed as the court sees

fit.  Neither claimants nor particular common benefit counsel can now lay claim to the charity set

aside and the proposal is not inherently objectionable.

---

case, the Special Master agrees that $5 million is not an unreasonable value to place on claims
administration services, but nonetheless adopts the more conservative estimate for purposes of
this report and recommendation.

   [20]  *i.e.* settlement legal costs, settlement administration expenses, and potential fee
shifting liability.  The Committee allocated $6.25 million as a Medtronic benefit.  The Special
Master finds $5 million to be reasonable.  Nonetheless, the analysis serves to illustrate the
existence of real and substantial economic benefit to Medtronic resulting from a transfer of
responsibility to the common benefits attorneys, and a reasonable allocation does not diminish
the funds available for distribution to claimants.

**Milberg LLP Allocation**

The initial allocation recommendations by the Committee contained no allocation

to Milberg LLP based upon the court's disqualification of the firm at a relatively early stage in

the litigation, and the Committee's deference to the District Court's discretion with respect to the

firm's claim for fees earned prior to the disqualification.  Milberg LLP had submitted an

application seeking a fees allocation in the total amount of $1,329,541.25, as well as expenses in

the amount of $52,579.62.  In its response to the Committee's total rejection of the allocation

request, Milberg LLP merely asked for appropriate and just compensation.  In reply, the

Committee maintained its position in opposition to any allocation but noted that, in any event,

the request included pre-MDL time and expenses (over 50%) that no firm had been allowed, but

the Committee also acknowledged that the Milberg Weiss firm had made contributions to the

plaintiffs' litigation efforts in the MDL context, and that the individual attorney involved in the

Medtronic MDL was not a participant in the offending activities by other firm principals that led

to the disqualification.

At hearing, the court requested that the Committee make a determination

regarding a common benefits fees allocation to Milberg LLP using the same criteria that was

followed in making recommendations as to all other fees applicants.  In its subsequent review of

the Milberg LLP submissions, the Committee applied the criteria outlined in its memorandum to

the court filed on July 25, 2008, and thereby determined that the firm's original claim would

have been reduced to an amount less than $500,000 for MDL common benefit contributions.

The Committee then conferred with the Milberg firm (as had been done with other attorneys) to

discuss the matter, and the Committee and the Milberg firm agreed to a recommendation in the

amount of $275,000 as common benefit fees and expenses.  Based upon the Committee's

calculated allocation, as subsequently discounted pursuant to negotiation and compromise, the

Special Master concludes that $275,000 would be an appropriate, just, and adequate allocation of

common benefit attorneys' fees to Milberg LLC.

## Contingent Fee Limitations

Retained counsel participating at the hearing presented arguments opposing any

court ordered reduction in contractual contingent fee rates.[21]  The arguments were not

particularized in the sense that counsel addressed their own retainer agreements.  The central

focus of the hearing was the Committee's motion for approval of common benefit fees, and the

issue of contingent fees was not directly briefed by counsel.  Nonetheless, attorneys' fees

arrangements are inherently subject to *sua sponte* review by the court to the extent that such fees

may be excessive.  Rosquist v. Soo Line R.R., 692 F.2d 1107, 1111 (7th Cir. 1982)("Even when

the validity of the fee contract has not been challenged by the parties, it is within the court's

inherent power of supervision over the bar to examine the attorneys' fee for conformance with

the reasonable standard of the Code of Ethics."); In re Guidant, 2008 WL 682174, at *18 ("[A]s

for the representative counsel involved, Plaintiffs' counsel have a built in conflict of interest that

is directly opposed to that of their clients.")[22]   Furthermore, the issue of contingent fees comes

before the court in the context of a challenge to the common benefit attorneys' fees based upon a

contention that the total amount of proposed combined common benefit fees and contingent fees

---

[21]  Daniel Becnel, Eric Roberson, Kirk Chapman.

[22] Rosquist and In re Guidant cited in In re Vioxx Products Liability Litigation, Order and Reasons, page 10. __ F.Supp.2d __, 2008 WL 4091672 at *5 (E.D. La, August 27, 2008).

consumes an excessive portion of the total settlement package, to the detriment of claimants.[23]

Not surprisingly, counsel for objecting claimant Yvette Gonzalez, attorney

Edward Siegel, Esq., did not state opposition to contingent fee agreements, or seek a court

ordered limit on individual contingent fee rates.  Rather, counsel alleged that individual claimant

awards should be enhanced by limitations on common benefits fees awards.  In this regard Mr.

Siegel incorrectly assumed that claimant allocations were subject to further reduction for

payment of common benefit fees, and it is not at all clear to what extent the objection may have

root in that misconception.  In fact, claimant allocations are subject only to costs and contingent

fees, along with any applicable liens.  As previously described herein, the common benefit

attorneys' fees portion of the settlement in this case was separately designated.  The settlement

with defendant Medronic, Inc. was negotiated and completed, and allocations to claimants were

determined and accepted (with allowance for objections) with the claimants' knowledge and

understanding that individual allocations were subject to reduction for costs and contingent

attorneys' fees pursuant to individual retainer agreements.  The Special Master's determination

that common benefit attorneys' fees should be allowed as requested does not disturb the status of

contingent fee arrangements in any way.  The Special Master does find, however, that the unique

circumstances presented in this settlement justifies an across-the-board upper limit on contingent

attorneys's fees.  In that regard, the Special Master concludes that 33 1/3% contingent fee

agreements in this MDL are reasonable and should not be modified by the court.  However, with

regard to retainer agreements that provide for a rate higher than 33 1/3%, the court finds that

---

[23]  Objection by plaintiff Yvette Gonzalez.

rates are excessive and should be limited to 33 1/3%.[24]

The Special Master has not conducted a survey of retainer agreements in this MDL and finds no compelling reason to undertake such a chore.  By way of anecdote and experience the court is aware that some allocations in this matter are subject to contingent attorneys' fee deductions in excess of one-third of the allocation.  The Special Master recognizes that such fee arrangements are not *per se* unethical, and may indeed be reasonable in some instances, in light of state law limitations, provisions for payment of litigation costs, and the circumstances of the individual case.   Nonetheless, it is recommended that contingent fees greater than one third should be found presumptively excessive and unreasonable in this MDL.  As a general matter, retained counsel carried minimal burden with respect to discovery, trial preparation, or settlement processes, and in many instances, enjoyed significant economy of effort as a result of case volume, thereby eliminating the justifications for higher contingent fees.

Based upon the above Report and discussion, the Special Master makes the following:

### RECOMMENDATION

The Special Master hereby recommends that:

1.  The objection on behalf of plaintiff Yvette Gonzalez be **overruled** [Docket No. 1201]; Common Benefits Attorneys' fees in the total amount of $18,250,000 be approved; and the fund be distributed among counsel who made common benefit contributions as determined by the Common Benefits Attorneys' Fees Committee, as stated in Exhibit A to the

---

[24] This decision has no effect on individual retainer agreements which provide that contingent attorneys' fees be paid at a 33 1/3% rate or any lower percentage rate.  Those retainer agreements are enforceable by their particular terms.

supplemental affidavit of Daniel Gustafson, filed October 14, 2008;[25]

2.  Contingent fees claims pursuant to retainer agreements between clients and retained counsel be permitted as designated in individual retainer agreements between counsel and clients, except that retained counsel's fee may not exceed 33 1/3 percent of the gross award allocated to the client;

3.  The objection of Milberg LLP be **sustained in part and overruled in part** as provided herein [Docket No. 1191].  Milberg LLP should be awarded a common benefits attorneys' fees and expenses allocation in the total amount of $275,000, as provided in Exhibit A to the supplemental affidavit of Daniel Gustafson, filed October 14, 2008; and

4.  A charitable contribution of $1,000,000 from the common benefits fees fund be approved, subject to court supervision.


Dated:    October 20, 2008


                                              s/Arthur J. Boylan
                                              Arthur J. Boylan
                                              United States Magistrate Judge



        Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  Written objections must be filed with the Court before November 4, 2008.
        Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete

---

[25] [Docket No. 1220].

transcript of the hearing within ten days of receipt of the Report.